2 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Peter LOBB, Plaintiff-Appellant,
v.
UNITED AIR LINES, INC., and the Boeing Co., Defendants-Appellees.
 No. 92-15846.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 15, 1993.
Decided July 8, 1993.
 
 Before FAIRCHILD*, BEEZER, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff Peter Lobb seeks a new trial as a result of claimed errors by the district court in this multidistrict tort litigation action. Lobb contends the district court abused its discretion when it granted the defendants a protective order prohibiting Lobb from deposing witnesses a second time. He argues he was denied due process because his counsel was unable to attend important pre-trial proceedings due to the district court's strict, pressured trial schedule. He claims the district court erred in admitting false, irrelevant, and prejudicial surprise testimony by a witness for the defendants. He also challenges the district court's decision not to order a new trial because of the inadequacy of the jury's damage award. We affirm.
 
 
 3
 * Lobb contends the district court abused its discretion in granting the defendants' motion for a protective order prohibiting him from taking videotaped depositions, for presentation at trial, of witnesses who had already been deposed by the defendants. Lobb's counsel sought to videotape the depositions in the hope that a visual presentation to the jury would be more effective. Lobb does not argue that any facts would have been developed that were not presented in the witnesses' reports and deposition summaries.
 
 
 4
 A district court has broad discretion to make protective orders. Fed.R.Civ.P. 26(c) (district court "may make any [protective] order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); Graebner v. James River Corp., 130 F.R.D. 440, 441 (N.D.Cal.1989). The fact that the witnesses had already been deposed by the defendants does not necessarily justify issuance of a protective order. Deines v. Vermeer Mfg. Co., 133 F.R.D. 46, 48 (D.Kan.1990). However, "repeat depositions are disfavored." Graebner, 130 F.R.D. at 441.
 
 
 5
 The district court did not abuse its discretion in deciding the added presentation value of the videotape format did not outweigh the additional burden to the defendants. Lobb did not seek the second deposition because new evidence came up or a new legal theory was introduced. See id. Even in cases when second depositions have been permitted, the district court often imposes the restriction that the second deposition not cover the same ground. See, e.g., LeBlanc v. Broyhill, 123 F.R.D. 527, 529 (W.D.N.C.1988). See also Swift Bros. v. Swift & Sons, Inc., 1992 WL 201002 at * 1, 1992 U.S.Dist.Lexis 12039 at * 3 (E.D.Pa.1992) (noting protective order may be granted when "information sought has already been obtained by prior depositions") (citing Wright & Miller, 8 Federal Practice and Procedure Sec. 2037, pp. 272-73). Here it would be even more burdensome to the defendants to require them to "set aside [their] own pre-trial preparation to accommodate" Lobb when the trial was little more than two weeks away. Graebner, 130 F.R.D. at 441.
 
 
 6
 Lobb explains that he thought the first deposition was only for settlement purposes, and that more complete depositions were to take place later. The district court found no evidence suggesting that there was any such understanding between the parties, nor does Lobb present such evidence on appeal. It would be "unfair and uneconomical" to establish a rule that any witness could be deposed twice, once for settlement purposes and once for trial. Id. at 441-42. While Lobb suggests that he was trying to save money so that he could accept a lower settlement offer, he cannot justify making the defendants incur a considerably larger burden in terms of money and inconvenience in expectation that the case would settle.
 
 II
 
 7
 Lobb argues that his lead counsel's absence from certain pretrial proceedings due to the district court's strict schedule for the litigation arbitrarily deprived him of his right to counsel of his choice in violation of due process.[1]
 
 
 8
 Lobb's counsel Fleming submits he was unable to attend the defendants' depositions of Lobb and his witnesses in Australia because he was deposing witnesses in another case at the time. He attributes the conflict to the district court's "furious" trial schedule, and states that "due to the district court's discovery schedules, adjournments of discovery were not feasible." There is no evidence in the record that the district court ordered that discovery was to take place on specific dates. In fact, the depositions were apparently scheduled, at Fleming's instruction, by the defendants and Lobb's Australian solicitors at a mutually convenient time. The depositions could have been scheduled at another time had Fleming indicated he desired to be present. It was not the district court's discovery schedule which mandated Fleming's absence; he apparently chose not to go to Australia to attend. In his brief, Fleming notes that he "failed to appear out of a concern for costs and because the pressing discovery schedule ... demanded that he be elsewhere but precluded his requesting an adjournment" (emphasis added). Fleming did not call the scheduling conflict to the defendants' or the district court's attention nor object in any way at that time.
 
 
 9
 Fleming was also absent from voir dire. Voir dire was scheduled for February 6, 1992. Fleming was unable to attend because he was trying another case that morning so he sent another associate from the firm instead. Fleming did not criticize the associate's performance but noted that a jury might have a special prejudice against a particular attorney.
 
 
 10
 Fleming never indicated that he would not be able to participate in voir dire because of other commitments. Neither he nor the associate brought the conflict to the magistrate's or district court's attention or objected in any way at the time. Lobb contends that the district court's precise trial schedule, which the district court indicated would not be changed, led him to believe that he could not object. The district court pointed out that the problem could have been solved without any change in the trial schedule, as voir dire could have been moved to the afternoon so Fleming could participate.
 
 
 11
 We conclude that there was no violation of due process as the district court did not act to deny Lobb the right to be represented by Fleming.
 
 III
 
 12
 Lobb sought a new trial on the basis that an expert witness for the defense gave surprise testimony which Lobb was unable to rebut because he did not attend the trial. He also claims the testimony was false, irrelevant, and prejudicial. We review the denial of a motion for a new trial for abuse of discretion. United States v. LaFleur, 971 F.2d 200, 206 (9th Cir.1991), cert. denied, 113 S.Ct. 1292 (1993).
 
 
 13
 Lobb's counsel did not object to the allegedly false "surprise" testimony, nor did he ask for a continuance, a recess, a side bar, or a limiting instruction. "Litigants are required to be reasonably alert at trial in the protection of their own interests. If this record could be said to show reasonably genuine surprise on the part of appellants, the remedy would have been to ask for a continuance to allow appellants to 'gather their wits' and prepare for the presentation of rebuttal testimony." Moylan v. Siciliano, 292 F.2d 704, 705 (9th Cir.1961). Lobb also does not demonstrate that Weiss had any duty to disclose the information prior to trial.
 
 
 14
 The testimony was relevant. The thrust of the comment is that the inconvenience and expense of appearing for trial was more of a factor than his anxiety about flying. The severity of Lobb's anxiety about flying was a key issue for the jury in considering damages.
 
 
 15
 As to prejudice, the comment would have had the effect of reminding the jury that Lobb was not present at trial. Of course, that fact would have been obvious. Considering the considerable probative value of the testimony, the district court did not plainly err in concluding the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice" because it suggested that convenience as much as anxiety kept Lobb from attending trial. Fed.R.Evid. 403.
 
 
 16
 For the first time on appeal, Lobb raises the issue that Weiss' testimony should be excluded under the psychotherapist-patient privilege. Neither California law nor federal common law recognizes a privilege for psychotherapist-patient communications regarding the mental or emotional condition of the patient when at issue in the case. Cal.Evid.Code Sec. 1016; Re Grand Jury Proceedings, 867 F.2d 562, 575 (9th Cir.), cert. denied, 493 U.S. 906 (1989).
 
 
 17
 The district court did not abuse its discretion in denying Lobb's motion for a new trial.
 
 IV
 
 18
 Lobb "bears [the] substantial burden" of demonstrating that the district court abused its discretion in not granting a new trial on the basis that the jury award was inadequate. Hard v. Burlington Northern R.R., 812 F.2d 482, 486 (9th Cir.1987). Here, the jury awarded $18,010 (Aus.) for Lobb's emotional and physical injuries and economic losses. The jury awarded $8,010 (Aus.) for economic losses, and $10,000 (Aus.) for emotional distress. Lobb's physical injuries were minor scratches, cuts, and abrasions. After almost a year of therapy at the defendants' expense, Lobb was still reluctant to fly but his own experts testified that his therapy had otherwise been a success. Though Lobb did not recover for all the economic loss he claimed, the jury award did compensate him for the loss in salary occasioned by his demotion for over a year's time. The jury may well have decided not to credit Lobb's claims for economic loss suffered after his purchase of a cricket franchise approximately six months after the accident.
 
 
 19
 It is difficult to determine whether Lobb's jury award was comparable to that of other passengers similarly situated. Only a handful of other verdicts are in the record for purposes of comparison, and each case would vary according to its facts. The only other verdict in the record for a passenger in Lobb's specific area of the plane is $18,000 (US). Lobb's award was not so clearly outside the range that we must deem it inadequate as a matter of law.
 
 
 20
 Lobb argues that the inadequacy of the verdict is clear since the jury verdict is substantially lower than the defense counsel's own suggested figure. The defense counsel did not suggest that one year's salary was the lowest reasonable recovery for Lobb's emotional distress, rather that one year's salary was an appropriate ceiling for damages.
 
 The judgment of the district court is
 
 21
 AFFIRMED.
 
 
 
 *
 Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the 7th Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Because we conclude that Fleming's absence was not due to any act of the district court, we need not address the nature of any due process rights to representation by counsel of his choice that a party may have in a civil case. See Kentucky West Virginia Gas Co. v. Pennsylvania Pub. Util. Com., 837 F.2d 600, 618 (3rd Cir.), cert. denied, 488 U.S. 941 (1988)