**David and Barbara JACK, et al., Plaintiffs,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

**And Related Actions.**

**Nos. C 92–3787 BAC, et al.**

United States District Court, N.D. California.

April 25, 1994.

Gerald C. Sterns, Sterns, Walker & Lods, San Francisco, CA, for plaintiffs.

Stephen C. Kenney, Kenney, Burd, Knutson & Markowitz, San Francisco, CA, William C. Brown, III, Bigham, Englar, Jones & Houston, New York City, for defendants.

AMENDED ORDER

CAULFIELD, District Judge.

The order of the court entered March 4, 1994 regarding summary judgment is amended to read as follows:

*BACKGROUND*

On July 30, 1992, Trans World Airlines flight 843, departing New York's John F. Kennedy Airport for San Francisco, experienced an aborted takeoff, crash and fire. Fire completely destroyed the plane but all passengers survived. During the aborted takeoff and evacuation, many passengers suffered minor physical injuries. Many passengers were traumatized by the incident.

Flight 843 passengers filed several lawsuits in San Francisco Superior Court, seeking damages for physical injury and emotional distress. Defendant Trans World Airlines, Inc. ("TWA") removed to federal court the three actions in which the plaintiffs held tickets for international flights. This court previously denied plaintiffs' motion to remand to state court and held that the sole basis of recovery available to passengers injured while traveling pursuant to contracts of international carriage was under the Multilateral Convention for the Unification of Certain Rules Relating to International Transportation by Air, *opened for signature* October 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, *reprinted at* 49 U.S.C.App. § 1502 note (1988) (hereinafter, the "Warsaw Convention" or "Convention").

Defendant TWA now moves for partial summary judgment on several grounds. TWA moves for partial summary judgment against plaintiffs claiming physical injuries and emotional distress on the ground that emotional distress damages are not allowed as to those plaintiffs who did not have physical manifestations of emotional distress. TWA moves for partial summary judgment against plaintiffs claiming emotional distress only on the ground that such claims are barred by *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) (hereinafter "*Floyd*"). TWA moves for partial summary judgment on the state law causes of action on the ground that they are preempted by the Warsaw Convention. Finally, TWA moves for partial summary judgment on the punitive damages claims on the ground that such damages are not allowed under the Warsaw Convention.

Plaintiffs make several legal arguments in opposition to the motion and present evidence which they contend requires denial of the motion. Much of the evidence submitted by plaintiffs was challenged by TWA.

*DISCUSSION*

A. *Standards for Summary Judgment.*

Summary judgment is appropriate where "there are no genuine issues as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and material facts are those "that might affect the outcome of the suit under the governing law," *id.* at 248, 106 S.Ct. at 2510. All reasonable inferences from the evidence must be drawn in favor of the non-moving party. *Id.* at 242, 106 S.Ct. at 2505.

B. *Timeliness of Motion.*

At the hearing on TWA's motion, plaintiffs' counsel argued for the first time that the motion was premature because of the limited discovery allowed in this case under the Joint Pretrial Order of September 28, 1993. The court is unpersuaded by this argument. The Joint Pretrial Order provided for discovery in three phases; the cases have not moved beyond Phase 1. The assertion that plaintiffs were prevented from gathering evidence to present a meaningful opposition to TWA's motion simply is not supported by the Joint Pretrial Order. The discovery permitted in Phase 1 included, without limitation, obtaining plaintiffs' medical records from July 1, 1988 through the present, depositions of plaintiffs, depositions of treating doctors, and ten interrogatories regarding damages. Any information relevant to the issues raised by TWA's motions

was discoverable in Phase 1. Moreover, the information plaintiffs needed is and was in their own hands and not in the hands of third parties.

Plaintiffs' counsel's suggestion that TWA sandbagged plaintiffs by using the original interrogatory responses is meritless. TWA had no duty to use different discovery tools such as depositions and requests for admissions to confirm information it had received in plaintiffs' responses to interrogatories. Nor may plaintiffs claim that TWA's reliance on the original interrogatory responses was unjustified. Plaintiffs' counsel told TWA's counsel at the June 1993 mediation that amended responses to the interrogatories immediately would be forthcoming. TWA filed its motions four months later, without having received the amended responses.

Upon receipt of TWA's motion, plaintiffs requested an extension of the deadline to file their oppositions because they anticipated it would "take an enormous amount of time and energy to oppose" the motions. The court granted a four-week extension. Plaintiffs continued to submit evidence in support of their opposition long after the extended deadline for the opposition had passed. This evidence was not rejected as untimely.

C. *Evidentiary Rulings.*

Among the evidence submitted by plaintiffs in opposition to TWA's motions were affidavits of plaintiffs, attorneys, a psychiatrist, a biomechanic, and an engineer; photographs and videotapes of the incident; and original as well as amended interrogatory responses. The court will address the problems presented by plaintiffs' evidence before turning to the other issues raised by the motions.

1. *Execution of Affidavits and Declarations.*

Federal Rule of Civil Procedure 56(e) permits the use of affidavits in support of or opposition to a motion for summary judgment. An affidavit must be confirmed by oath or affirmation. *Brady v. Blue Cross and Blue Shield of Texas, Inc.,* 767 F.Supp. 131, 135 (N.D.Tex.1991). In lieu of an affidavit, a party may submit an unsworn declaration made under penalty of perjury. 28 U.S.C. § 1746. Declarations executed outside of the United States must be declared to be made "under penalty of perjury under the laws of the United States of America." *Id.* All declarations must be declared to be "true and correct."

Plaintiffs submitted numerous affidavits [1] containing the following language: "I [name] declare under penalty of perjury *and* of the laws of [foreign country], the State of California and the United States of America as follows:" (emphasis and bracketed material added). Most of the affidavits were executed outside of the United States.[2]

On January 11, 1994, the court ordered twenty-four of plaintiffs' affidavits stricken because they were neither confirmed by oath or affirmation nor stated to be true and correct and made under penalty of perjury under the laws of the United States of America.[3] The affiants failed to strictly or even

1. Although the documents were labelled as affidavits, the text of the documents suggests they were intended to be declarations. For convenience, the court will refer to all the purported declarations and affidavits as affidavits.

2. The signatures of two affiants were acknowledged but not made under oath in front of notaries public. A third plaintiff, Mohammad Meddoun, executed his affidavit under oath and the notary public so stated. His affidavit is not among those stricken for improper execution.

3. A recitation that a declaration is made "under penalty of perjury *and* ... of the laws of the United States of America" is inadequate for documents executed outside the United States. The inclusion of the word "and" greatly changes the meaning of the sentence. The purpose of requiring a person outside the United States to execute the document under penalty of perjury under the laws of the United States is to impress upon him the seriousness of the obligation to tell the truth and the possibility of prosecution for perjury if he fails to tell the truth. When a person executes a document outside the United States, a recitation that it is made under penalty of perjury without reference to which country's perjury laws will be applied provides no assurance of truthfulness because the penalty of perjury may be non-existent or trivial in the place where the person signed the document.

The failure to recite that the statements are "true and correct" renders a declaration defective because there is no indication of truthfulness without the phrase. When one declares under penalty of perjury that he is merely making state-

substantially comply with the requirements for execution of affidavits and declarations. The court permitted the plaintiffs to submit replacement affidavits free of the described defects.

Plaintiffs resubmitted the same affidavits after making changes only on the first page of each to correct the recitations that the document was made under penalty of perjury and that the statements made were true and correct. The changed documents were not re-executed by plaintiffs and there was no marking on the affidavits that the changes had been made with the affiants' permission. By changing the text of document after they had been signed, plaintiffs created a new problem. These documents altered after execution are unacceptable and are stricken from the record.[4]

2. *Translated Affidavits.*

Witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator. *See* Fed.R.Evid. 604 and 901.

Signed foreign language versions of affidavits were attached to several of the plaintiffs' English-language affidavits. Originally, plaintiffs offered no explanation of any translation. In its January 11, 1994 order, the court directed plaintiffs to submit appropriate evidence regarding the accuracy of any translation and the qualifications of the translator. Plaintiffs then submitted a statement by an individual at a local translation center stating that the translations were true and correct. That statement is inadequate in that it is not a sworn statement, does not describe the maker's qualification or expertise regarding language translation, does not state whether the maker did the translations, and does not explain the circumstances under which the affiants signed affidavits in two languages (*e.g.*, whether the affiants were advised of the content of the English-language affidavits before signing them). Plaintiffs have failed to lay a proper foundation for the admission of the translated affidavits.[5]

3. *Contradictory Testimony.*

A party cannot create a genuine issue of fact merely by submitting testimony which contradicts, without explanation, his earlier sworn testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540,

ments, rather than making true and correct statements, the reader has no assurance that anything in the document is true. The omission of the phrase "true and correct" makes the possibility of a penalty for perjury meaningless.

4. The following documents are stricken from the record in Case No. C–93–2974–BAC: affidavits of Veronique Boquet, Helga Behr, Walter Behr, Daniel Cauwel as guardian *ad litem* for Laurent Cauwel, Pascal Deruyck, Jose Maria Soares Franco, Albin Halbartschlager, Emilio Huse, Kristen Jack, Sofia Jonckers, Bart Jorissen, Jacques Leuvrey, Maria Daniel Magalhaes, Nuno Pizarro Campus Magalhaes, Benoit Meesen, Fernando Mendes, Nathalie Ruelle, Nuria Roca, Brigit Stursa, Chris Tsardoulias, Brecht Vandermeiren, and Cheryl Ann Werner. In Case Nos. C–92–3787–BAC and C–93–3156–BAC, the affidavits of Barbara Jack and David Jack are stricken from the record.

The resubmitted declarations of Emilio Huse, Nuno Pizarro Campus Magalhaes, Benoit Meessen, Fernando Mendes and Nuria Roca failed to state that they were made under penalty of perjury under the laws of the United States. (See footnote 3, *supra.*)

The court also strikes from the record the affidavits of Valerie Charlent and Enzo Antinori as guardian *ad litem* for Dania Antinori in Case No. C–93–2974–BAC because they fail to comply with the requirements for execution of affidavits and declarations, and the translations are not properly authenticated. These affidavits were filed too late to be specifically described in the Court's January 11, 1994 order.

5. The following documents are stricken from the record in Case No. C–93–2974–BAC because plaintiffs failed to present adequate evidence of the accuracy of the translations: Enzo Antinori as guardian *ad litem* for Dania Antinori, Veronique Boquet, Daniel Cauwel as guardian *ad litem* for Laurent Cauwel, Valerie Charlent, Pascal Deruyck, Albin Halbartschlager, Sofie Jonckers, Bart Jorissen, Jacques Leuvrey, Nathalie Ruelle, Brigit Stursa, and Brecht Vandermeiren. Some of these documents also may have been stricken because they were improperly executed or altered after execution.

Affidavits submitted by the guardians *ad litem* for two plaintiffs have an additional problem. The affiants do not state whether the information recited therein applies to the guardians or to the minors and there is no indication of how the signing guardians obtained information from the minors.

543–44 (9th Cir.1975). Sham affidavits may be disregarded in summary judgment proceedings. This rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony.... Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'" *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir.1991). An affidavit might not be a sham if the affiant's actions were the result of honest discrepancy, a mistake, or the result of newly discovered evidence. Also, if the affiant gives a plausible excuse for the contradiction, the affidavit might not be deemed a sham. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985).

At issue in this case is whether plaintiffs' original interrogatory responses should be treated as sworn statements. The court earlier held a hearing to resolve a factual dispute between the parties. The court finds the following facts based on the affidavits of counsel and the parties' presentations at the earlier evidentiary hearing. During an earlier mediation, counsel for both parties agreed to use Judicial Council form interrogatories to provide information about plaintiffs' claimed injuries and damages. TWA served Judicial Council interrogatories on each of the plaintiffs. The instructions on the first page of the form interrogatories clearly required verified answers. The responses served by plaintiffs were signed by plaintiffs' counsel, but were not verified. After receiving the interrogatory responses, TWA's counsel requested the verifications several times. In one telephone conversation, plaintiffs' counsel told TWA's counsel that TWA could treat the responses as though verified and that verification forms were in the process of being sent to TWA. This conversation was confirmed in a follow-up letter. Upon receiving TWA's mediation brief, plaintiffs' counsel apparently learned that several plaintiffs would not be able to recover under the Warsaw Convention because they claimed only emotional distress injuries in their interrogatory responses. Plaintiffs then argued that the interrogatory responses were not intended to be binding. At the mediation in June 1993, plaintiffs' counsel assured TWA's counsel that defense counsel promptly would receive plaintiffs' amended responses to the interrogatories. No amended responses or verifications were received until November 1993, after TWA filed its motions for summary judgment. Many of those amended responses were not verified, and in a few cases, the verifications attached to the amended responses pre-dated the mediation hearing and/or verified the original responses. Based on the foregoing, the court determines that the original responses should be deemed to be sworn statements by the plaintiffs.

The original interrogatory responses of those plaintiffs who had initially listed only emotional distress injuries contradict their amended interrogatory responses.[6] All plaintiffs now make physical injury allegations whereas most had not done so in their original interrogatory responses. Even those plaintiffs who had originally listed some physical injuries greatly expanded the list of their injuries in the amended responses.

Plaintiffs failed to adequately explain the contradictory statements. No plaintiff explained why his or her response changed. The person offering the changed testimony, not his or her lawyer, should explain why his or her testimony has changed. Here, the only explanation offered for the changed testimony was from a legal assistant for plaintiff's counsel. Her explanation was unconvincing. The legal assistant testified by affidavit that plaintiffs' counsel had told TWA "that many of our clients had interpreted this ambiguous question" narrowly. The declarant did not state that the plaintiffs themselves misunderstood any question. The explanation is also unconvincing because some of the plaintiffs did list physical injuries, rather than just mental injuries, indicating

6. The original interrogatory responses also contradict plaintiffs' affidavits. The court disregards the affidavit of Mohammad Meddoun as an unexplained sham contradiction of his original interrogatory responses. Had the other affidavits not been stricken, the court would disregard them as sham contradictions of earlier sworn statements.

that at least those plaintiffs understood the interrogatories. The interrogatories were not ambiguous.[7] Although the legal assistant stated that the plaintiffs interpreted the interrogatories to call for statements of their injuries as of the date of the response to the interrogatory, rather than as of the date of the accident, this explanation is not supported by the responses. A number of plaintiffs complained of transient, minor injuries such as cuts, scratches and bruises suffered during the incident.

The court concludes that the amended interrogatory responses with their boilerplate catalog of physical injuries were sham contradictions of the original interrogatory responses. This unexplained contradictory testimony cannot create a triable issue of fact and defeat summary judgment.

4. *Other Evidence.*

a. *Photographs and Videotapes.* The court will receive crash photographs and videotapes in spite of hearsay, authentication and foundation problems. The court will not exclude the evidence on these grounds because the foundation problems may have been outside the control of plaintiff's counsel due to the discovery restrictions in the Joint Pretrial Order. The photographs of the airplane while it was burning and after the fire had been extinguished are, however, irrelevant to the issues presented to the court in these motions. Fed.R.Evid. 401 and 402. The videotape, which even plaintiffs concede is presented so that the court may see the severity of the accident, is irrelevant to the summary judgment proceedings. As noted throughout this order, the severity of the accident and the typical passenger's experiences are irrelevant because each plaintiff's injuries must be evaluated separately.

b. *NTSB Reports.* The report by the National Transportation Safety Board regarding a different incident on a different airline at a different airport is inadmissible. 49 U.S.C.App. § 1441(e); *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1384–85 (9th Cir.1985); *In Re Air Crash Disaster at Sioux City, Iowa*, 780 F.Supp. 1207 (N.D.Ill. 1991). The declaration of plaintiffs' counsel, Dennis Lods, reciting the contents of an expected NTSB Report regarding the Flight 843 accident is also inadmissible because it merely recites the contents of a report inadmissible under 49 U.S.C.App. § 1441(e).

c. *Declaration of Psychiatrist.* Plaintiffs offered the declaration of psychiatrist Martin Blinder regarding the symptoms of the plaintiffs. Without any indication that he has legal training and after stating that he did not fully grasp the meaning of the terms "lesions corporelles" and "blessures," Dr. Blinder opines that it is clinically probable that most if not all of the passengers sustained the "lesions corporelles" or "blessures" required by the Supreme Court's interpretation of the Warsaw Convention in *Floyd.* These legal opinions and conclusions are inadmissible because the declarant lacks the appropriate qualifications. Fed.R.Evid. 702 and 703.

d. *Declarations Regarding the Incident and Its Likely Impact on Plaintiffs.*

7. The interrogatories at issue were California Judicial Council Form Interrogatories 6.1 ("Do you attribute any physical, mental, or emotional injuries to the incident? If your answer is "no," do not answer interrogatories 6.2 through 6.7."), 6.2 ("Identify each injury you attribute to the incident and the area of your body affected."), and 6.3 ("Do you still have any complaints that you attribute to the incident? If so, [give the details].") Plaintiffs' original answers fell into two basic categories: (a) emotional distress only and (b) emotional distress and some physical injuries (almost all of which were very minor). In the revised responses, a boilerplate paragraph was added to every response to interrogatory 6.1. The boilerplate paragraph claimed the same numerous physical injuries for every plaintiff. Thus, for example, a plaintiff who originally responded that he had suffered only fright claimed in his amended response that he had suffered various emotional problems as well as a panoply of physical injuries including some that were alleged on information and belief.

At the evidentiary hearing, plaintiffs presented evidence that plaintiffs' counsel drafted the boilerplate paragraph after the mediation and directed his staff to amend the interrogatory responses to include it. Plaintiffs' counsel stated this was done to meet the requirements of the *Floyd* case. The exhaustive listing of injuries sprang from counsel's mind, not any plaintiff's mind, although the plaintiffs adopted the boilerplate by verifying the responses.

Plaintiffs offered the declarations of mechanical engineer Paul Packman, biomechanic Richard Snyder, and psychiatrist Martin Blinder. These declarants describe the damage to the plane, the circumstances of the aborted take-off, evacuation and fire, as well as physical and mental effects on plaintiffs. The declarations refer to passengers generally and to the likely events and circumstances. The declarants' failure to connect their conclusions to any particular plaintiff makes them irrelevant in these summary judgment proceedings.

D. *Constitutional Challenges to Warsaw Convention.*

1. *Ratification.*

Plaintiffs' contention that the Warsaw Convention is unconstitutional because it was improperly ratified is rejected. "The Constitution requires the Senate's consent to a treaty, art. II, § 2. The consent [for the Warsaw Convention] appears at 78 Cong. Rec. 11,582 (1934). Were that in error, the Senate has had forty-seven years in which to disclaim its consent. The court finds it persuasive that the Senate has not done so." *In Re Aircrash at Bali, Indonesia,* 684 F.2d 1301, 1307 n. 5 (9th Cir.1982).

2. *Right to Travel/Due Process.*

Plaintiffs' contention that the Warsaw Convention is unconstitutional because it violates the right to international travel is also rejected. The assumption underlying plaintiffs' argument—that international travel is a fundamental right—is erroneous. The Warsaw Convention easily passes constitutional muster when evaluated under the proper test.

" '[T]he 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. As such this 'right,' the Court has held, can be regulated within the bounds of due process.' " *Califano v. Aznavorian,* 439 U.S. 170, 176, 99 S.Ct. 471, 475, 58 L.Ed.2d 435 (1978) (citations omitted). Because international travel is not a fundamental right, limitations on it are evaluated under a rational basis test. *Califano v. Aznavorian, supra,* 439 U.S. at 177, 99 S.Ct. at 475; *Lee v. China Airlines Ltd.,* 669 F.Supp. 979, 982 (C.D.Cal. 1987). The Warsaw Convention's limitations on international travel are rationally based. *Lee, supra; Swaminathan v. Swiss Air Transport Co., Ltd.,* 962 F.2d 387, 390 (5th Cir.1992). The Convention was designed to, and does, achieve uniformity in the law regarding international air travel and promotes the development of the aviation industry. The Warsaw Convention has only a minimal effect on international travel. No one is prohibited from travelling abroad. At most, the Convention's liability and jurisdictional limitations may be a slight deterrent to would-be international travellers. *Lee, supra,* 669 F.Supp. at 983.

3. *Equal Protection.*

The Warsaw Convention does not falter under an equal protection analysis. Plaintiffs' contention that the Warsaw Convention violates their constitutional right to equal protection because it treats international and domestic air travellers differently is meritless.

No suspect class or fundamental right is involved, so the classification is acceptable if a rational basis exists for the distinction. *Lee, supra,* 669 F.Supp. at 983. As noted above, there is a rational basis for the distinction between international and domestic air travellers.

E. *Disregarding the Warsaw Convention as Outdated.*

The court declines to grant plaintiffs' request to disregard the Warsaw Convention because it has outlived its usefulness in that the airline industry is no longer the fledgling industry it was when the Convention was drafted.

The court is without the power to disregard the treaty. *See In Re Aircrash at Bali, Indonesia, supra,* 684 F.2d at 1308. It would be improper for this court to substitute its judgment for that of Congress to hold that the Convention has outlived its usefulness. *Id.; Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 253, 104 S.Ct. 1776, 1783, 80 L.Ed.2d 273 (1984).

F. *State Law Claims—Preemption.*

Plaintiffs' argument that the Warsaw Convention is not the exclusive cause of action for plaintiffs and that they should be allowed to maintain state law causes of action and obtain punitive damages is meritless.

The law of the case doctrine allows a court to decline to consider questions already decided in the same case. This court earlier ruled that "the Warsaw Convention preempts state law causes of action, not just remedies." *Jack v. Trans World Airlines, Inc.*, 820 F.Supp. 1218 (N.D.Cal.1993). Under the law of the case doctrine, the court declines to revisit this question which has already been decided in these cases.

G. *State Law Claim for Post-Crash Duty of Care.*

The court rejects plaintiffs' contention that the claim for TWA's breach of a post-crash duty of care is not within the scope of the Warsaw Convention because it occurred after the passengers deplaned.

Plaintiffs have not shown that the events on the tarmac were not part of the Warsaw Convention "accident," or that there is any sensible way to separate the Convention accident from any events giving rise to non-Convention liability. The two cases cited by plaintiff are inapposite in that neither involved an incident that began as a Warsaw Convention accident and then became a non-Warsaw Convention accident, as plaintiffs want this court to treat the Flight 843 incident. See *Martinez Hernandez v. Air France*, 545 F.2d 279, 284 (1st Cir.1976) (terrorist attack in baggage claim area after passengers had uneventfully deplaned was not a Warsaw Convention accident) and *Abramson v. Japan Airlines*, 739 F.2d 130, 134 (3d Cir.1984) (flight attendant's refusal to give a sick passenger a place to lie down was not a Warsaw Convention accident). By contrast, plaintiffs do not contend that the plane crash was not a Warsaw Convention accident. Plaintiffs point to no evidence to support their claim that anything other than a Warsaw Convention accident occurred in this case. The events on the tarmac were an integral part of the accident and therefore part of the Warsaw Convention cause of action which preempts state law causes of action.

TWA's motions for partial summary judgment as to the state law causes of action are granted.

H. *Punitive Damages.*

TWA's motion for partial summary judgment on plaintiffs' punitive damages claims is granted.

Punitive damages are not recoverable in actions governed by the Warsaw Convention, even if the air carrier engaged in willful misconduct. *In Re Korean Airline Disaster of September 1, 1983,* 932 F.2d 1475 (D.C.Cir.1991); *In Re Air Disaster at Lockerbie Scotland On December 21, 1988,* 928 F.2d 1267 (2d Cir.1991).

I. *Emotional Distress Claims.*

The major dispute between the parties concerns TWA's motion for partial summary judgment on the plaintiffs' claims for emotional distress. The motion is based on information provided in plaintiffs' original interrogatory responses and several depositions. Of the plaintiffs to whom these motions apply, about half claimed only emotional distress while the other half claimed emotional distress plus minor physical injuries. TWA contends that even if a passenger suffered impact injuries, he cannot recover for emotional distress unless there were physical manifestations of his emotional distress. Plaintiffs contend that emotional distress is recoverable if the passenger has *either* impact injuries or physical manifestations.

TWA also contends that the passengers who suffered only emotional distress are not entitled to any recovery. Plaintiffs do not dispute the assertion, but argue that it is irrelevant here because all of the plaintiffs claim some impact injuries and/or physical manifestations of emotional distress. Plaintiffs' argument is based on amended interrogatory responses and affidavits which are stricken by the court.

Plaintiffs also argue that a triable issue of fact is created by the Declaration of Martin Blinder. Dr. Blinder gives two opinions of

concern. The first is that "most, if not all of the accident victims would have suffered at least transient extrinsic physical impact/injury...." Dr. Blinder did not examine any of the plaintiffs covered by TWA's motion. Dr. Blinder's opinion is speculative and is insufficient proof on summary judgment. The plaintiffs are suing individually. Comments as to what probably happened to most of the passengers are irrelevant. An opinion must apply to a particular plaintiff and it must be shown that there is an adequate basis for the expert's opinion.

Also of concern is Dr. Blinder's opinion that the emotional distress suffered by the plaintiffs has intrinsic physical effects. The court is not persuaded that Dr. Blinder's opinion enables plaintiffs to satisfy *Floyd*'s requirement of bodily injury. Dr. Blinder's comments regarding the physiologic component of emotional distress would apply to any near death experience, including that suffered by the plaintiffs in *Floyd.* Those plaintiffs complained of mental distress including fright, anxiety, stress, loss of sleep and fear. *In Re Eastern Airlines Inc., Engine Failure, Miami International Airport on May 5, 1983,* 629 F.Supp. 307, 312 (S.D.Fla.1986). Thus, under Dr. Blinder's theory, even the *Floyd* plaintiffs would have survived the Supreme Court's *Floyd* ruling. Application of Dr. Blinder's opinion would eviscerate *Floyd.* The court declines to do so.

Certain terms have particular meaning in this discussion. "Impact injuries" refer to the bodily injuries (such as bruises, lacerations and broken bones) that passengers suffer during an airplane accident (here, the aborted takeoff and evacuation of the plane).[8] "Physical manifestations" refer to those bodily injuries or illnesses (such as skin rashes and heart attacks) that result from the distress one experiences during or after an accident.[9] "Emotional distress" refers to the psychic trauma that one experiences either during or after the accident. The distress may be about the accident (*e.g.,* fear of flying or claustrophobia) or about the injury sustained (*e.g.,* embarrassment about disfigurement or concern that an injury will develop complications).

1. *Emotional Distress Claims After the Floyd Decision.*

Article 17 of the Warsaw Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking. (49 Stat. 3018.)[10]

In *Floyd,* the Court concluded that the Warsaw Convention did not allow recovery for *purely* mental injuries because mental injuries were not encompassed by the term "bodily injury" in the text of Article 17. The Supreme Court left unresolved the question of whether emotional distress is compensable under the Warsaw Convention if accompanied by bodily injuries:

> We conclude that an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury. Although Article 17 renders air carriers liable for "damage sustained in the event of" ("dommage survenu en cas de") such injuries ... we express no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries. (499 U.S. at 552, 111 S.Ct. at 1502.)

8. Impact injuries also include injuries or illnesses such as heat stroke or severe stomach cramps that occur during a hijacking or extended delay on a plane.

9. For purposes of this order, the court finds that there was an "accident" within the meaning of the Warsaw Convention.

10. The original French text of Article 17 provided:

> "Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur lorsque l'accident qui a cause le dommage s'est produit a bord de l'aeronef ou au cours de toutes operations d'embarquement et de debarquement." (49 Stat. 3005.)

Whether the recoverable damages—including emotional distress—are those caused by the bodily injury or by the accident itself is unclear under Article 17 and *Floyd.* Article 17 provides that the carrier is liable for "damage sustained in the event of . . . bodily injury." It does not state that the damages must be caused by the bodily injury.[11] Causation is not implied in the French phrase "dommage survenu en cas." *See e.g.,* 2 *Grand Larousse De La Langue Francaise,* p. 1392 (Librairie LaRousse 1991) (defining "dommage") and 6 *Grand Larousse De La Langue Francaise,* p. 5864 (Librairie LaRousse 1991) (defining "survenir"). In fact, the failure of the Convention's drafters to use the phrase "caused by" may have some significance. One construction is that the recoverable damages need not be caused by the bodily injury, and may instead be those caused by the accident.

The appropriate approach to the emotional distress problem requires review of the range of possible meanings of *Floyd* and Article 17.

2. *Approaches to Emotional Distress in a Warsaw Convention Case.*

There are four possible approaches regarding emotional distress in a Warsaw Convention case: (1) no recovery allowed for emotional distress; (2) recovery allowed for all distress, as long as a bodily injury occurs; (3) emotional distress allowed as damages for bodily injury, but distress may include distress about the accident; and (4) only emotional distress flowing from the bodily injury is recoverable.

a. *No Recovery Allowed for Emotional Distress.*

The first approach is to deny recovery for all emotional distress, even if bodily injury occurs. Only pecuniary loss, such as medical expenses and lost income, would be recoverable by an injured passenger.

This approach is consistent with the *Floyd* court's narrow reading of Article 17's reference to bodily injury. Also, disallowing emotional distress damages is appropriate in light of the state of the law in some countries at the time the Warsaw Convention was drafted: "in common-law jurisdictions mental distress generally was excluded from recovery in 1929." *Floyd,* 499 U.S. at 544–45 n. 10, 111 S.Ct. at 1498 n. 10. Finally, such an approach furthers the pro-airline industry goals of the Warsaw Convention because it is so restrictive of passengers' rights.

The first approach is undesirable because it gives so little to the passengers. The Warsaw Convention at least attempted to strike a balance between the interests of passengers and the airlines, but this approach is too one-sided in favor of the airlines. Also, even though many common-law jurisdictions excluded recovery for mental distress in 1929, France recognized it, and as even the *Floyd* court noted, other countries did recognize it as long as accompanied by physical impact or manifestation.

b. *Recovery Allowed for All Distress, As Long As a Bodily Injury Occurs.*

Under the second approach, recovery is allowed for all emotional distress as long as a bodily injury occurs, regardless of the connection between the distress and the bodily injury. For example, a passenger with a scratched arm could recover for the trauma and fear due to the plane crash. The bodily injury opens the door to Warsaw Convention liability for emotional distress. Plaintiffs favor this approach.[12]

11. The meaning of "dommage survenu" was considered in *In Re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 928 F.2d 1267, 1280–82 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 331, 116 L.Ed.2d 272 (1992). That court was "convinced that the proper translation is 'damage sustained' and deduce[d] therefore that Article 17 contemplates monetary or compensatory damages only," and not punitive damages. *Accord: In Re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475, 1486 (D.C.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

12. To support their argument that emotional distress is allowed if either impact injuries or physical manifestation of distress occur, plaintiffs have cited the jury instructions in one of MDL cases arising out of a cargo door blow-out on a United flight out of Honolulu.

The cited jury instructions are not helpful for several reasons. First, it is not clear that United

This approach is supported by a broad reading of Article 17's imposition of liability for "damage sustained in the event of ... bodily injury...." The drafters did not use the phrase "damage caused by ... bodily injury," which would have been a clearer signal that any emotional distress must be connected to the bodily injury. The second approach also is supported by the *Floyd* court's careful avoidance of any mention of a need for a causal connection between the bodily injury and the damages recoverable under the Warsaw Convention. Finally, this approach is consistent with the approach to emotional distress in earlier tort cases: a physical impact or manifestation was a threshold requirement because the physical impact or manifestation was thought to be proof that the emotional distress was not feigned.

Several factors suggest that the second approach is not correct. The approach treats emotional distress as a free-standing cause of action—inconsistent with courts' rulings (including this court's earlier ruling in these cases) that the Warsaw Convention creates a cause of action, not just a limit on remedies. Alternatively, the approach implicitly would read emotional distress as damages resulting from the accident (as opposed to the injury), which is difficult to do under the wording of Article 17 and the reasoning in *Air France v. Saks,* 470 U.S. 392, 398, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985) ("the text of Article 17 refers to an accident which caused the passenger's injury, and not to an accident which is the passenger's injury.")

c. *Emotional Distress Allowed as Damages for Bodily Injury, but Distress May Include Distress About the Accident.*

Under the third approach, emotional distress is considered an element of the damages for bodily injury. However, the distress need not be about the injury to be compensable. This approach usually produces similar results to the second approach, but differs in that the distress must occur at the same time or later than the bodily injury. Thus, one cannot recover for the fear before the impact and bodily injury.

The courts in the cases concerning the Korean Air Lines plane shot down by a Soviet missile apparently used the third approach. Damages for the passengers' predeath pain and suffering were allowed in *In Re Korean Air Lines Disaster of September 1, 1983 (Bowden),* 814 F.Supp. 592, 598 (E.D.Mich.1993); *In Re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073, 1080–81 (S.D.N.Y.1992); and *Zicherman v. Korean Air Lines Co., Ltd.,* 814 F.Supp. 605, 606 (S.D.N.Y.1993).

Emotional distress was treated as an element of damages allowable under the Warsaw Convention in *In Re Air Crash Disaster Near Honolulu, Hawaii, supra,* 783 F.Supp. 1261 (N.D.Cal.1992) (addressing rights of survivors of dead passengers). Damages apparently were allowed for emotional distress resulting from the accident. *See Lobb v.*

was still in the case at the time of trial. The only defendant submitting jury instructions was Boeing. Even if United were still in the case at the time of trial, there is no indication whether United objected to the proposed instructions. Citing instructions as to which there was no disagreement means only that United did not dispute the instructions, not that the court actually ruled upon the issue. Second, in an order applicable to all the MDL cases, Judge Walker ruled that the Warsaw Convention was not exclusive, and allowed DOHSA and maritime claims if not preempted by contradicting portions of the Warsaw Convention. The order was made before the Supreme Court's *Floyd* decision. Thus, one cannot determine if the instructions were given in accordance with that order or the law as it now exists under *Floyd.* Finally, in another case arising from the same accident, Judge Walker treated emotional distress as an element of damages. See *In Re Air Crash Disaster Near Honolulu, Hawaii, on February 24, 1989,* 783 F.Supp. 1261 (N.D.Cal.1992). That decision is inconsistent with the jury instructions cited by plaintiff because the latter allow emotional distress even if the emotional distress occurs before the bodily injury, which would be inappropriate if emotional distress is treated as an element of damages.

Plaintiffs also claim that their position is supported by *Chendrimada v. Air–India,* 802 F.Supp. 1089 (S.D.N.Y.1992). *Chendrimada* provides no help to either side in this case. In *Chendrimada,* the plaintiff claimed he became weak, experienced nausea, suffered severe cramps, pain, anguish, malnutrition and mental injury as a result of an 11–hour grounding of a flight due to heavy fog. The court ruled merely that the claimed injuries satisfied *Floyd*'s requirement of bodily injury. The court did *not* state how the alleged emotional distress would be handled.

United Air Lines, Inc., 1993 WL 259470, 1993 U.S.App. LEXIS 17495 (9th Cir.1993) (unpublished opinion) (affirming award of damages for fear of flying to a passenger seated near the area where seats and passengers were sucked out of the plane—court was reviewing the adequacy of the amount, not whether the Warsaw Convention even permitted such an award).

> The Convention itself does not specify the elements of damages which a plaintiff might recover under Article 17. Instead, "[c]ommentators and case law are in accord that the Convention leaves the measure of damages to the internal law of parties to the Convention."
>
> * * * * * *
>
> Grafted onto our common law tradition, and recognizing the Warsaw Convention's adoption of "internal law" with respect to the measure of damages, Article 17 must be read to create a cause of action which encompasses the remedies traditionally provided by common law in personal injury actions, wrongful death actions, and survival actions. (*In re Air Crash Disaster Near Honolulu, Hawaii, supra,* 783 F.Supp. at 1264–65.)

There is limited federal common law on emotional distress. Under common law, emotional distress damages would be permitted for distress about the plane crash, not just the distress about the injury. *See e.g., Hall v. Ochs,* 817 F.2d 920 (1st Cir.1987) (in federal civil rights action, emotional distress allowed for the trauma involved in a racially motivated arrest, not just for the minor injuries); *Lentz v. M/V Eastern Grace,* 1988 WL 135809, 1988 U.S. Dist. LEXIS 14133 (D.Or. 1988) (trial court awarding emotional distress damages in part for seaman's discomfort around boats on the water after accident in which his boat was hit at sea, although he suffered only bumps and bruises in the accident). However, the usefulness of analogizing to other areas of federal common law is questionable because of the uniqueness of the Warsaw Convention's exclusion of recovery for pure emotional distress.

d. *Only Emotional Distress Flowing from the Bodily Injury Is Recoverable.*

Emotional distress flowing from the bodily injury is an element of the damages allowed for the bodily injury under the fourth approach. Damages are permitted for emotional distress only to the extent the emotional distress is caused by the bodily injury. For example, the passenger may recover for fear related to his broken leg, but not for fear related to the plane crash. Here, however, emotional distress also can have a separate role as the causal link between the accident and the bodily injury. For example, the passenger may recover for a heart attack caused by the distress of the plane crash.

Emotional distress is important to recovery in both physical impact and bodily manifestation cases, but in different ways under this approach:

> [T]he compensable injuries must be "bodily" but there may be an intermediate causal link which is "mental" between the cause—the "accident"—and the effect—the "bodily injury". And once that predicate of liability—the "bodily injury"—is established, then the damages sustained as a result of the "bodily injury" are compensable including mental suffering.... However, only the damages flowing from the "bodily injury", whatever the causal link, are compensable....
>
> We hold, therefore, that defendant is liable for plaintiff's palpable, objective bodily injuries, including those caused by the psychic trauma of the hijacking, and for the damages flowing from those bodily injuries, but not for the trauma as such or for the nonbodily or behavioral manifestations of that trauma. (*Rosman v. Trans World Airlines, Inc.,* 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848, 72 ALR3d 1282, 1294 (N.Y.1974).)

The *Rosman* court applied the rule to a passenger who developed a skin rash either during or after a hijacking: "if plaintiff Herman's skin rash was caused or aggravated by the fright she experienced on board the aircraft, then she should be compensated for the rash and for the damages flowing from the rash. It follows that, if proved at trial, she should be compensated for her mental

anguish, suffered as a result of the rash, since the anguish would have flowed from the 'bodily injury.' "

The fourth approach prevents great inequities among the passengers subject to the Warsaw Convention. The happenstance of getting scratched on the way down the evacuation slide does not enable one passenger to obtain a substantially greater recovery than that of an unscratched co-passenger who was equally terrified by the plane crash. Passengers' recoveries are more reasonable and predictable, as desired by the drafters of the Warsaw Convention. The approach will work in different types of accidents. It allows for greater recovery with more severe injuries (presuming more distress flows from more serious injuries) and even allows for recovery in wrongful death cases. (Survivors may recover for physical manifestations of their grief at the loss of a loved one.)

The fourth approach is harmonious with *Air France v. Saks, supra.* The damage is not damage from the accident, it is damage from the bodily injury. Viewing emotional distress as damage caused by bodily injury does read a causal component into the phrase "damage sustained in the event of," but that is not prohibited under *Floyd.*

One difficulty with the fourth approach is that emotional distress damages might not be allowed in a situation like that of the Korean Air Lines plane shot down in Soviet airspace. There, the plane was airborne for at least nine minutes after the missile strike before crashing into the sea and disintegrating. *Zarif v. Korean Airlines, Co., Ltd.,* 836 F.Supp. 1340 (E.D.Mich.1993). If no impact injuries had been suffered until the plane hit the water, no recovery would be allowed for the nine minutes of pre-crash terror. (Emotional distress damages could, however, be recovered for the physically debilitating grief suffered by the decedent's surviving relatives).

The court adopts the fourth approach. Plaintiffs with impact injuries may recover for their impact injuries and the emotional distress flowing only from the physical injuries. They may also recover for the physical manifestations of their emotional distress. Plaintiffs with physical manifestations may recover damages for the manifestations and any distress flowing from the manifestations, but may not recover damages for the emotional distress that led to the manifestations. In both instances, the emotional distress recoverable is limited to the distress about the physical impact or manifestation, *i.e.*, the bodily injury. Recovery is not allowed for the distress about the accident itself.

Twenty-seven plaintiffs[13] complained of psychic trauma, but did not complain of impact injuries or physical manifestations of the emotional distress. TWA's motions are granted as to these plaintiffs because their claims are barred under the *Floyd* decision. Thirty-three plaintiffs[14] claim impact injuries and/or physical manifestations of their emotional distress. TWA's motions are denied as to those plaintiffs.

## *DISPOSITION*

1. TWA's motion for partial summary judgment as to plaintiffs' state law causes of action and claims for punitive damages is GRANTED in its entirety. Judgment shall

13. The plaintiffs who claimed only emotional distress were Dania Antinori, Helga Behr, Walter Behr, Veronique Boquet, Daniel Cauwel through his guardian *ad litem* Laurent Cauwel, Valerie Charlent, Pascal Deruyck, Jose Maria Franco, Albin Halbartschlager, Emilio Huse, Kristen Jack, Sofie Jonckers, Bart Jorissen, Jacques Leuvrey, Maria Magalhaes, Nuno Magalhaes, Mohammad Meddoun, Benoit Meessen, Fernando Mendes, Nathalie Ruelle, Brecht Vandermeiren, Cheryl Ann Werner, Brigit Stursa, Barbara Jack, and David Jack.

14. The plaintiffs claiming impact injuries and/or physical manifestations in addition to emotional distress are Kristel Brabant, Adam Breindel, Beatriz Collins, Dolores Compano, Marisa Compano, Leonardo dosRemedios, Lucille dosRemedios, Jean-Francois DuFrasne, Sheri Fox, Margarida Franco, Erika Hellins, Klaus Huber, Ryan Jack, Yvan Kalantarian, William Kistner, Sebastien LaFosse, Nathalie LaGrange, Katalin Lesko, Jacqueline Leuvrey, Fabienne Mathgen, Bice Mennes, Dominique Moelans, Cecily Monette, Bruno Remmerie, Johan Reider, Ingrid Reider, Liesbeth Roelandt, Jessica Saussus, Felicia Simel, Chris Tsardoulias, Caroline Van Den Hecke, Philippe Van Nuys, Liv Vrinssen, C.L. Wysuph, Nuria Roca, and Odete Matias.

be entered in favor of TWA on the state law causes of action and punitive damages claims in the following cases:

a. C 92–3787 BAC and C 93–3156 BAC, *David Jack, et al. v. TWA;*

b. C 92–3972 BAC and C 93–3158 BAC, *C.L. Wysuph, et al. v. TWA;*

c. C 92–4606 BAC and C 93–3157 BAC, *Odete Matias, et al. v. TWA;*

d. C 93–1586 BAC, *Josef Ben–Shimol, et al. v. TWA;*

e. C 93–1793 BAC, *Richard Ganigan, et al. v. TWA;*

f. C 93–2920 BAC, *Victor Solorzano, et al. v. TWA;*

g. C 93–2973 BAC, *Sandra DeGennaro, et al. v. TWA;*

h. C 93–2974 BAC, *Dania Antinori, et al. v. TWA;*

i. C 93–2978 BAC, *Jennifer E. McAlister v. TWA;*

j. C 93–2979 BAC, *Eric Dehlin, et al. v. TWA;*

k. C 93–2980 BAC, *Serge Macel, et al. v. TWA;*

l. C 93–2981 BAC, *Julia Elhauge v. TWA;*

m. C 93–2982 BAC, *Marianne Eva Levine v. TWA;*

n. C 93–2983 BAC, *Deena Anderson v. TWA;*

o. C 93–2984 BAC, *Fulvia Mescola v. TWA;*

p. C 93–2985 BAC, *Aghieszka Gal v. TWA;* and

q. C 93–3955 BAC, *Gilles Zemmour, et al. v. TWA.*

2. TWA's motion for partial summary judgment regarding emotional distress claims is GRANTED as to plaintiffs Dania Antinori, Helga Behr, Walter Behr, Veronique Boquet, Laurent Cauwel through his guardian *ad litem* Daniel Cauwel, Valerie Charlent, Pascal Deruyck, Jose Maria Franco, Albin Halbartschlager, Emilio Huse, Kristen Jack, Sofie Jonckers, Bart Jorissen, Jacques Leuvrey, Maria Magalhaes, Nuno Magalhaes, Mohammad Meddoun, Benoit Meessen, Fernando Mendes, Nathalie Ruelle, Brecht Vandermeiren, Cheryl Ann Werner, Brigit Stursa, Barbara Jack, and David Jack.

3. TWA's motion for partial summary judgment regarding emotional distress claims is DENIED as to plaintiffs Kristel Brabant, Adam Breindel, Beatriz Collins, Dolores Compano, Marisa Compano, Leonardo dosRemedios, Lucille dosRemedios, Jean–Francois DuFrasne, Sheri Fox, Margarida Franco, Erika Hellins, Klaus Huber, Ryan Jack, Yvan Kalantarian, William Kistner, Sebastien LaFosse, Nathalie LaGrange, Katalin Lesko, Jacqueline Leuvrey, Fabienne Mathgen, Odete Matias, Bice Mennes, Dominique Moelans, Cecily Monette, Bruno Remmerie, Johan Reider, Ingrid Reider, Liesbeth Roelandt, Jessica Saussus, Felicia Simel, Chris Tsardoulias, Caroline Van Den Hecke, Philippe Van Nuys, Liv Vrinssen, C.L. Wysuph, Nuria Roca, and Odete Matias.