118 F.Supp.2d 916 (2000)
In re AIR CRASH AT LITTLE ROCK, ARKANSAS, ON JUNE 1, 1999
Anna Lloyd, Plaintiff,
v.
American Airlines, Inc., Defendant.
No. 4:00CV00300HW, MDL No. 1308.
United States District Court, E.D. Arkansas, Western Division.
October 27, 2000.
*917 Scott J. Lancaster, J. Philip Malcom, William H. Sutton, Friday, Eldredge & clark, Little Rock, AR, for Anna Lloyd.
Michael E. Hale, D. Keith Fortner, Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, Byron L. Freeland, Mitchell, Williams, Selig, Gates & Woodyard, PLLC, Little Rock, AR, Randal R. Craft, Jr., William C. Brown, III, Haight Gardner Holland & Knight, New York, NY, for American Airlines, Inc.

ORDER
HENRY WOODS, District Judge.

Procedural History:
The trial in the case of Anna Lloyd against American Airlines, Inc. began on Tuesday, October 10, 2000 and concluded on Thursday, October 12, 2000. The jury returned a verdict in favor of the plaintiff in the amount of $6,500,000.
At the close of the plaintiff's case, and again at the conclusion of the defendant's case, the defendant moved for judgment as a matter of law as to Ms. Lloyd's claim for damages for Post-Traumatic Stress Disorder (PTSD) on the ground that her mental and emotional problems did not flow from any physical injury; that is, that her PTSD is the result of the trauma of going through the crash landing of flight 1420, and was not proximately caused by physical injuries suffered in the crash.

Background:
When flight 1420 crashed and burned on a stormy runway on the night of June 1, 1999. Anna Lloyd was sitting at the very back of the airplane. During the crash and ensuing fire in the cabin of flight 1420, Ms. Lloyd was injured, both physically and mentally. Physically, she suffered a puncture wound, apparently when parts of airplane seats came unhinged and struck the back of the leg, puncturing her skin. She also suffered injury to her knee when seats collapsed on the fronts of her legs while her knees were extended, causing traumatic *918 quadriceps tendinitis. She also suffered from smoke inhalation while she was trapped in the back of the plane. Although the plaintiff concedes that these physical injuries have, in the main, subsided, she does have scarring on her leg as a result of the puncture wound, and she continues to experience stiffness in her knee.
The plaintiff's primary damages consist of debilitating emotional and psychological injuries. Her unrebutted testimony established that she reasonably believed that she would die in the wreckage of flight 1420 when the cabin filled with fire and smoke, and she was trapped in the back of the plane. Her remarkable escape from the burning plane was through a relatively small hole in the wreckage, because all emergency exits were apparently jammed shut after the crash, and a wall of fire and smoke prevented her escape to the front of the plane. The plaintiff now suffers from serious, chronic PTSD and major depression.
At trial, the defendant disputed the permanency of the plaintiff's PTSD, but did not dispute that she suffers from serious PTSD and from major depression as a result of the crash. In its motion for judgment as a matter of law, the defendant argues that the plaintiff should not be allowed to recover for PTSD at all, whether it be temporary or permanent, because the PTSD does not flow from her physical injuries. Defendant primarily relies on the testimony of the plaintiff's treating psychiatrist who testified that, in his opinion, Ms. Lloyd would have suffered from PTSD even without the knee injury.

Analysis:

A. Does physical injury open the door to all damages, whether physical or mental?
In Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569, the United States Supreme Court considered whether, in a case covered by the Warsaw Convention, a passenger could recover for purely mental or psychic injury in the absence of physical injury or physical manifestation of injury. The Court held as follows:
"We conclude that an air carrier cannot be held liable under Article 17 [of the Warsaw Convention] when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury."
Id. at 552, 111 S.Ct. 1489. The Court declined to decide "whether passengers can recover for mental injuries that are accompanied by physical injuries." Id.
The facts in Floyd are quite different from the undisputed facts in the present case. Nonetheless, there are applicable lessons. In Floyd, an Eastern Airlines flight was en route from Miami, Florida to the Bahamas. Three of the airplane's four engines failed shortly after takeoff. The plane began to lose altitude, and the Eastern crew told the passengers that the plane would soon crash land in the Atlantic Ocean. Fortunately for all concerned, the pilots managed to land the airplane in Miami, and there was no crash. A number of passengers aboard the Eastern flight sued for emotional distress. The principal distinction between Floyd and the case at bar is that the fears of the passengers on the Eastern flight did not come to fruition, whereas the worst fears of the passengers on board flight 1420 did, in fact, come to pass as the airplane crashed and burned.
In Floyd, the airline argued that "Article 17 ... makes physical injury a condition of liability." Id. at 533, 111 S.Ct. 1489. The Court noted that the American translation of the text of the Warsaw Convention, which was originally written in French, was presented to the United States Senate for ratification in 1934 as follows:
"The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by a passenger ... on board the aircraft or in the *919 course of any of the operations of embarking or disembarking."[1]
Floyd at 535, 111 S.Ct. 1489 (Emphasis in Floyd but not in Warsaw Convention). As noted above, the Court concluded that, "Article 17 does not allow recovery for purely mental injuries." Id. at 534, 111 S.Ct. 1489.
Thus, the Supreme Court requires physical injury in order for an international passenger to recover. According to undisputed testimony at trial, Anna Lloyd suffered physical injury to her knee, and to the back of her leg. She also suffered smoke inhalation, and had cuts and scrapes as a result of crawling through the small opening in the wreckage of the airplane to escape. It is also undisputed that the plaintiff suffers mental injuries in the form of PTSD and depression as a result of the crash.
Is the requirement of physical injury for recovery under the Warsaw Convention a threshold which triggers liability, after which a plaintiff can recover for all injuries, including mental; or does the physical injury requirement imply that psychic injury is compensable only to the extent it flows from, or is proximately caused by, the physical injury? A second question is whether chronic PTSD and depression, from which the plaintiff undoubtedly suffers, are physical injuries in and of themselves in the sense that they cause changes in the way the brain physically functions. In other words, are chronic PTSD and major depression physical manifestation of injury because of alterations they cause in brain function?
In Floyd, the Supreme Court set out the conditions, or prerequisites, for liability under the Warsaw Convention:
"Thus, under Article 17 [of the Warsaw Convention], an air carrier is liable for passenger injury only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered `mort,' `blessure,' `ou ... toute autre lésion corporelle,' and (3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking."
Floyd at 535-36, 111 S.Ct. 1489. These requirements go to liability of the air carrier, and not to damages. The Court speaks of "conditions" establishing when an air carrier is "liable." It does not discuss the types of damages available. In Floyd, the passengers lost because the Court found the air carrier was not liable under the terms of the Warsaw Convention. The language of the Warsaw Convention itself speaks of the "event" that triggers liability:
"The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by a passenger ...."
49 Stat. 3018 (Emphasis added).
Once liability has been established under the Warsaw Convention, the question of damages is determined by the law of the passenger's domicile or place of permanent residence. The air carriers specifically agreed to have damages decided in this manner. The 1996 International Air Transport Association (IATA) Agreement, which supplements the Warsaw Convention, specifically provides that damages in Warsaw cases are to be determined in accordance with the law of the domicile or permanent residence of the passenger. Because the Convention makes no provision for specific elements of damages, the air carriers have properly supplemented the Convention with the IATA Agreement.
*920 In Floyd, the Supreme Court offered two explanations for why the Warsaw Convention itself makes no mention of mental injuries:
"(1) [M]any jurisdictions did not recognize recovery for mental injury at that time, or (2) the drafters simply could not contemplate a psychic injury unaccompanied by a physical injury."
Floyd, at 544, 111 S.Ct. 1489. The second explanation lends credence to the notion that physical injury is a prerequisite, or threshold requirement, in order to recover for mental or psychic injury.
Federal courts have come to different conclusions regarding the nexus required between physical and psychic injuries suffered by passengers involved in airline accidents. In In re Aircrash Disaster Near Roselawn, Indiana, 954 F.Supp. 175 (N.D.Ill.1997), the district court noted that the Warsaw Convention itself contains no prohibition against the recovery of any particular type of damages and held that, once liability has been established, passengers may recover for all the damage they sustained in the accident, both physical and emotional.
On the other hand, in Jack v. Trans World Airlines, 854 F.Supp. 654 (N.D.Cal. 1994), a district court held that Warsaw passengers could recover only for those mental damages which flowed from the physical injury. The Jack court was concerned with the inequity of permitting one passenger with a slight physical injury to recover for mental and emotional injury, while another passenger with severe emotional injury, but no physical injury, would be unable to recover.
"The happenstance of getting scratched on the way down the evacuation slide [might] enable one passenger to obtain a substantially greater recovery than that of an unscratched co-passenger who was equally terrified by the plane crash."
Jack at 668.
The district court in Longo v. Air France, 1996 WL 866124 (S.D.N.Y.1996), refused to allow the plaintiffs to recover for their fear of death after the plane they were on was unable to stop upon landing and skidded into the ocean. The plaintiffs suffered minor bruising during the landing and emergency evacuation into the water, and one plaintiff stepped on a sea urchin. The district court granted the defendant's motion to dismiss the claim for emotional injury.
"To rule otherwise would be to give a windfall to that passenger who, in the course of evacuating, fortuitously pinched his little finger in his tray table."
Longo at 2.
Inequity of remedies is always a concern, but it should not be used to deny recovery to a passenger who is entitled to damages. As the court in Roselawn noted:
"We are not unmoved by the reasoning of [courts which fear inequities], but believe that it represents a policy argument that we are not empowered to engage in here, where the commands of Article 17 itself and our Supreme Court are relatively plain.... We agree with the lower court opinions ... that possible inequities of recovery among equally terrified fellow passengers present a very real and troubling issue .... We view this problem as a side effect of Article 17's focus on physical injury as a threshold requirement for liability, rather than being caused by permitting passengers to recover for the damage they sustained in the accidentboth physical and emotionalonce liability is established."
Roselawn at 179.
This Court is always troubled by the seeming inequities in the law resulting from the application of different standards for recovery, but an attempt to "make it fair" by denying one person a right to recover because another person, somewhat similarly situated, is unable to recover is a draconian solution. For example, I held, *921 before the Lloyd trial, that plaintiffs suing under Arkansas law, whether international or domestic passengers, could not sue for pre-impact fright or terror. I based this ruling on an old Arkansas case, Chicago, R.I. & P. Co. v. Caple, 207 Ark. 52, 179 S.W.2d 151 (1944), in which the Supreme Court of Arkansas held that there could be no recovery for fright and emotional distress experienced before impact. In Caple, a child caught her foot in a cattle guard which crossed a railroad track. As the child watched a train bearing down on her, she frantically screamed and waved to warn the train, but was unable to extricate her foot. The train hit the child, knocking her body several feet from the track. She died from the injuries sustained in the accident.
The Arkansas Court held that the child's estate could not recover for the terror she must surely have felt watching the train travel for more than eight hundred feet before it hit her. This is not the most enlightened holding in the jurisprudence of the State of Arkansas. Nonetheless, it is the law in Arkansas. In accordance with the Caple case, I have refused to allow plaintiffs, whose damages are controlled by Arkansas law, to adduce evidence of their fright, terror, or sense of impending doom as the plane made its way from Dallas, Texas to Little Rock, Arkansas in a severe thunderstorm before the crash.
On the other hand, one international passenger on flight 1420 was a domicile of the State of Oklahoma. Oklahoma recognizes a right to recover for pre-impact fright. Thus, the Oklahoma domiciliary was permitted to recover for her pre-impact fright and terror, whereas that element of damage was not available to the plaintiff in this case. Both the Oklahoma domiciliary and the plaintiff in this case were international passengers covered by the Warsaw Convention; they had traveled together throughout their university's trip abroad; they boarded flight 1420 together in Dallas. Nonetheless, due to the differences in applicable law, one Warsaw passenger was permitted to recover for pre-impact fright, and the other was not.
Furthermore, there were both domestic and international passengers injured when flight 1420 crashed. Passengers covered by the Warsaw Convention are precluded from seeking punitive damages. Domestic passengers are free to assert such a claim. This is true even though the domestic and international passengers were all affected by the disaster. Passengers whose damages are limited by the Warsaw Convention would, no doubt, like to avail themselves of the same opportunity to sue for punitive damages as the domestic passengers have; but that is not the law. Should I preclude the domestic passengers from suing for punitive damages because the international passengers cannot recover this type of damage?
It is the duty of trial judges to apply the law as it has been established by the Congress (in the case of the Warsaw Convention), state legislatures, and higher courts (in the case of the Floyd decision). It is no solution to the problem of perceived "inequity" in the application of the law to prevent a plaintiff with the requisite physical injuries from recovering for emotional damage just because some bend in the law prevents another plaintiff from recovering.

B. The nexus between mental injury and physical injury
I have held that once the threshold of liability has been crossed by a passenger in a Warsaw case by proving physical injury, then all damages available under the law of the passenger's domicile are recoverable, whether mental or physical, whether pre-impact or post-impact. Even if I thought the law required a connection between the physical injuries and the mental injuries, I find that the plaintiff in this case has adequately established the nexus between her physical injuries and her mental injuries. To be sure, the severity of her mental injuries far exceed the physical; nonetheless, they are tied.
*922 In the case of Alvarez v. American Airlines, Inc., 1999 WL 691922 (S.D.N.Y.), an international passenger, covered by the Warsaw Convention, was on an airplane headed from New York to Santo Domingo. Immediately after leaving the gate, the plane stopped. Fumes, then smoke, began to fill the cabin. All passengers were instructed to get out of the airplane. The plaintiff suffered bumps to his buttocks and knee when several of the exiting passengers piled up on the inflatable exit ramp. The plaintiff boarded another flight and completed his journey to Santo Domingo. He was later diagnosed with PTSD. The district court granted summary judgment to the airline on the issue of the plaintiff's psychological damages.
In Alvarez, the plaintiffs did not allege any substantial causal connection between the two types of injury. Alvarez at 3. The court acknowledged that the requirement of a causal connection is an open question after the Supreme Court's decision in Floyd. The major distinction between the facts in Alvarez and the facts in the case before this Court is that the plaintiff in this case presented ample evidence that her psychological injuries are related to the physical injuries she suffered.
Anna Lloyd testified at trial that when the plane finally came to rest, "our seats had stacked on top of each other like dominoes. In order to get up, I had to lift the seat up that was on top of me." TR. 343. Because she was seated in the next-to-last row at the back of the plane, she headed toward the rear exit. The flight attendant sent her, and other passengers who had gone to the rear of the plane, back the other direction, to the front of the plane:
A: I didn't even make it back to my seat before I was met with the smoke of the airplane. And it was thick, crushing black smoke. And I got down on the ground, and I pulled my dress over my face, over my nose and my mouth. And I went back to the rear because I knew I couldn't make it out the other way.
TR. 344.
....
Q: Was there very little air there that was without smoke?
A: Back towards the back in the exit place there was a gap. And there was a little bit of fresh air back there, but not enough for all of us.
Q: Were people crowding and pushing to get back there to that little bit of air?
A: Panic had really set in. And everyone wanted off that airplane. They were pushing. Some men were jumping on the door trying to get it to open. He did. They got it open. And the stewardess was the first one out.
TR. 345.
....
Q: Anna, did you finally get to that opening where the stewardess had left?
A: Yes, sir, I did.
Q: What did you do, and how did you try to get out?
A: I turned sideways, and I crouched down. And I squeezed through the opening. I immediately fell about five or six feet into mud and rocks and nastiness.
TR. 346.
The plaintiff also testified that when the seats "dominoed," they "had come out of the bolt on the floor. One of the bolt-holding things stabbed me in my leg." TR. 349. The plaintiff was taken to Arkansas Children's Hospital, where she was treated for pain to her knee, leg, and ankle; she was given oxygen and released. Dr. Wesley Kluck's medical records regarding Anna Lloyd indicate that the plaintiff was later diagnosed with traumatic quadriceps tendinitis caused by airplane seats falling on top of her knees while they were flexed. Plaintiff's Exhibit 7.
On direct examination, the plaintiff's psychiatrist, Dr. Stewart Harris, testified as follows:
Q: Do you have an opinion, Dr. Harris, of whether or not the injury to Anna Lloyd's knee that you described that *923 occurred in the crash is a part of her posttraumatic stress disorder that she suffers from?
A: Yes, it's a factor, because it literally made her feel even more vulnerable when something injures one's body in the context of this horrible experience. So it is a factor.
Q: Do you have an opinion, Dr. Harris, whether or not the crash caused an injury to Anna Lloyd's brain as a result of this crash?
A: Well, the crash and the experience created the posttraumatic stress disorder and the major depressive disorder, which are manifestations of brain dysfunction, of brain abnormalities, and in that sense damage. As I explained yesterday, it's not damage like a bullet or a stroke, but it's damage to the function of the brain.
TR. 425.
On cross examination, defendant's counsel elicited the following from Dr. Harris:
A: Right. Having your body damaged, for almost anyone, there's a significant injury, it increases a sense of vulnerability. Her body was damaged, both her knee and thenin her words, I think was she was stabbed by the seats' supports.
TR. 470.
Defendant contends that the plaintiff's contention of connection between her physical and psychological injuries is defeated by Dr. Harris's testimony that she probably would have suffered PTSD with or without the knee injury:
Q: In your opinion, if she had not injured her knee, would she still have had the PTSD?
A: Yes. I think it was so horrible on that flight, she thought she was going to die, I think she would have had it without the knee injury.
TR. 470.
....
Q: Thank you. And are you telling me that if a person injures her knee, they're going to develop PTSD?
A: I'm sorry?
Q: I'm sorry, too.
A: Excuse me.
Q: People injure knees all the time and don't get PTSD?
A: Absolutely.
Q: In Anna's case, certainly you don't believe that the knee injury was the cause of her PTSD?
A: I think it was part of the whole picture. Shethe plane apparently was going down the runway, out of control, from what she and the other members of that flight have told me, sideways, sliding down the runway, and then apparently went over some sort of hump at the end of the runway where they were airborne sideways, or partially sideways before they hit the light thing, and then that snapped the seats up, which injured her physically. That was all part of thatall that process. I mean, how can you separate the knee from the horror of thinking you're going to be burned to death. I mean, it's all part of the same process.
TR. 470-71.
....
Q: But I think you told me earlier, even if she hadn't injured her knee, you believe that the psychological trauma of going through the accident would have caused the PTSD?
A: I think she would have had PTSD without the knee accident, or the knee injuryI'm sorryand without the injury to her calf. I think she would have had it because of theof what she went through emotionally on the airplane.
TR. 472
The problem with the defendant's thesis is that the knee and calf injuries, the smoke inhalation, were all part of a terrifying accident which led to the plaintiff's PTSD. The uncontradicted testimony in this case is that the physical injuries were *924 a proximate cause of the plaintiff's PTSD. The nexus is established, and there is nothing to support a holding that the physical injury be the only cause of psychological and mental injury. If that were the rule, no one surviving a serious air disaster could ever chin that pole.
In any event, Dr. Harris was not asked whether the plaintiff would have suffered PTSD absent the thick black smoke filling her lungs, absent the plane's hitting an object with such force that her seat and those in front and behind her were ripped from their moorings, absent the scrapes and bruises associated with squeezing through a small opening to escape from the flaming wreckage. Those were the physical injuries suffered by the plaintiff in this case.

C. Is post-traumatic stress disorder as a physical manifestation of injury?
Even if the plaintiff had not proved a connection between her physical injuries and her mental injuries, there was evidence in the record that PTSD, itself, constitutes a physical manifestation of injury. Dr. Harris testified that PTSD is a "physical injury." TR. 426. On cross examination, the defendant's counsel delved into the question of the physical manifestations of PTSD:
Q: Now, are you telling us that in every case, in your opinion, that in every case of posttraumatic stress disorder that's chronic, that there would be objective evidence with these test, with the hormone test, that would demonstrate objectively that there is brain dysfunction?
A: Well, the researchers have shown brain dysfunction in people who have chronic PTSD. I brought a sheath of abstracts I got from the National Library of Medicine [Plaintiff's Exhibit A] demonstrating lots of different abnormalities of function in chronic PTSD. When you say, would every person demonstrate it, would every person demonstrate the same abnormality? Probably not. Not the same abnormality. But people are different. Their biological makeup is different, so they react differently. But the consistent theme is that this is both a biological and psychological syndrome. It is not just psychological.

TR 437 (Emphasis added).
....
Q: As I understand your opinion then, with Anna Lloyd's brain dysfunction, that because her PTSD has been chronic, that you necessarily relate that she must have brain dysfunction therefor?
A: Yes, because of all the research findings that show it.
TR 438
In Weaver v. Delta Airlines, Inc., 56 F.Supp.2d 1190 (D.Mont.1999), the district court found that PTSD constitutes a physical injury and a physical manifestation of injury. As with the case before this Court, "[Plaintiff relied] on recent scientific research explaining that post-traumatic stress disorder evidences actual trauma to the brain cell structures. [Plaintiff's] posttraumatic stress disorder evidences an injury to her brain and the only reasonable conclusion is that it is, in fact, a bodily injury." Weaver at 1192. In Weaver, the plaintiff's PTSD was her only physical injury.
Through Dr. Harris, the plaintiff introduced articles explaining the physical and biological aspects of PTSD. (Plaintiff's Exhibit A.) These scientific articles provide sufficient cause to find that chronic PTSD causes biological, physical changes in brain function.
The Court of Appeals for the Third Circuit, in Terrafranca v. Virgin Atlantic Airways, Ltd., 151 F.3d 108 (3d Cir.1998), held that there could not be recovery unless a Warsaw passenger demonstrated direct, concrete bodily injury as opposed to mere manifestations of fear or anxiety. In that case, the plaintiff alleged that she suffered PTSD, along with anorexia, which resulted in her losing seventeen pounds. *925 The distinction, however, is that the plaintiff in Terrafranca apparently did not allege that PTSD was a physical manifestation of injury. Instead, she relied on her loss of weight as the physical manifestation of injury. Another important distinction was that there was no crash of the aircraft in Terrafranca. The passengers were told that there had been a bomb threat against the plane, and receiving the news of the bomb threat was the triggering event for the plaintiff's PTSD.
Likewise, in Jack v. Trans World Airlines, 854 F.Supp. 654 (N.D.Cal.1994), noted supra, the district court held that symptoms such as sleep problems and anxiety were not sufficient to constitute a physical manifestation of injury. The Jack Court suggested that a heart attack or skin rash would qualify as physical manifestations of injury.
The Terrafranca and Jack decisions reflect our nascent understanding of the nature of mental illness. It is not clear that those courts were presented with the scientific literature to underpin a finding that PTSD is a biological as well as an emotional and psychological illness.

Conclusion
This is not a case where the plaintiff pinched her little finger in her tray table. This is a case where there were real physical and mental damages. Even though any physical injury should permit a plaintiff to cross the liability threshold and access all available remedies in Warsaw cases, in this case the plaintiff's injuries were a proximate cause of her mental injuries. Furthermore, the evidence presented at trial, both in the form of expert testimony and exhibits, established that PTSD is a biological/physical as well as a psychological injury. Accordingly, judgment will be entered on the jury's verdict.
NOTES
[1] According to the original French text, the airline is responsible, "en cas de mort, de blessure ou de toute autre lésion corporelle." Ms. Lloyd obviously did not suffer mort (death), but she did suffer both other injuries enumerated. It is undisputed that Anna Lloyd suffered both la blessure in the wound to her right calf, and autre lésion corporelle (other bodily injury) when she suffered smoke inhalation and damage to the tendons in her knee.